**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| TUCK 'N' TILLIE, INC., a Kentucky corporation,<br>and<br>NORA LUCILLE BICKETT, individually,<br><br>Plaintiffs,<br><br>v.<br><br>PAULA SHAW<br>and<br>SUSAN DELVENIA STUMPH,<br>and<br>JACK STUMPH,<br><br>Defendants. | Civil Action No. 3:26CV-669-GNS<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br>**General Order 24-05 Statement: National Relief Sought** |

## NATURE OF THE ACTION

1. This is an action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 to resolve a dispute over the ownership of intellectual property used by Tuck 'n' Tillie, Inc. ("**TNT**" or the "**Company**"), a Kentucky corporation that designs and sells plush comfort companions, many of which are placed with children's hospitals and charitable organizations.

2. Plaintiff Nora Lucille Bickett conceived the concept underlying the Company's products in 1994, incorporated TNT in January 1996, and has at all times since been its sole shareholder and sole officer. She has funded, directed, and operated the business for three decades.

3. Defendants Paula Shaw and Susan Delvenia Stumph, who are Ms. Bickett's sisters, have asserted in a public court filing that the Company's designs, patterns, and prototypes were created by the parties' late mother, Matilda "Tillie" Bickett, that title to them resides in the decedent's heirs, and that Ms. Bickett is selling the Company's products without their permission. Defendant Shaw has separately asserted that she served on the Company's board of directors.

4. Those assertions are contradicted by the Company's contemporaneous corporate, banking, and tax records. Plaintiffs bring this action to obtain a judicial declaration resolving the ownership of the copyrights in the Company's designs, the ownership and validity of the Company's federally registered trademark, and the absence of any ownership or governance interest held by Defendants in the Company.

**PARTIES**

5. Plaintiff Tuck 'n' Tillie, Inc. is a corporation organized under the laws of the Commonwealth of Kentucky on January 10, 1996, bearing Employer Identification Number 61-1296930, with its principal place of business at 5005 Harrods Landing Drive, Prospect, Jefferson County, Kentucky.

6. Plaintiff Nora Lucille Bickett, also known of record as N.L. Bickett Edwards, is an individual residing in Jefferson County, Kentucky. She is the President, Secretary, and Treasurer of TNT and the holder of all issued and outstanding shares of its common stock. She is joined individually to the extent she holds any copyright interest in the works at issue in her personal capacity.

7. Defendant Paula Shaw is an individual residing at 6705 Westwind Court, Crestwood, Oldham County, Kentucky.

8. Defendant Susan Delvenia Stumph, who is also known as Delvenia Stumph, is an individual residing at 2757 Lake Jericho Road, Smithfield, Henry County, Kentucky.

9. Defendant Jack Stumph is an individual residing at 2757 Lake Jericho Road, Smithfield, Henry County, Kentucky. He is the husband of Defendant Susan Delvenia Stumph and is named as a co-trustee and as a remainder beneficiary under the will of Matilda E. Bickett described below. He is joined so that complete relief may be accorded among those already parties.

10. Matilda E. Bickett, the mother of Ms. Bickett and of Defendants, died testate on June 14, 2004. Her will was admitted to probate in Henry District Court on November 10, 2004, in In re the Estate of Matilda E. Bickett, No. 04-P-00116. No estate of the decedent is presently open and no personal representative has ever been appointed. No estate is therefore named as a Defendant in this action.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1338(a) because this action arises under the Copyright Act, 17 U.S.C. § 101 et seq., and the Lanham Act, 15 U.S.C. § 1051 et seq., and presents an actual controversy within the meaning of 28 U.S.C. § 2201.

12. This Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(a) because it forms part of the same case or controversy.

13. Venue is proper in this District and Division under 28 U.S.C. § 1391(b). Plaintiffs reside in Jefferson County, Defendant Shaw resides in Oldham County, and Defendants Stumph reside in Henry County, each of which lies within the Louisville Division of this District, and a substantial part of the events giving rise to the claims occurred here.

## FACTUAL BACKGROUND

### *A. Conception of the Concept (1994)*

14. In 1993 and 1994, Ms. Bickett was a party to a dissolution and custody proceeding in Jefferson Family Court, Division Two, styled In re: Bickett Edwards, No. 92-FD-01353. By agreed order entered in that action, her minor children were to spend extended periods away from her beginning in the summer of 1994. Out of that experience Ms. Bickett conceived the idea that became the Company’s product – a soft-sculpture companion-sized and shaped to wrap around a

person's shoulders, neck, and torso, so as to simulate the physical sensation of an embrace when a loved one is absent.

15. The Company's contemporaneous records confirm the date and the author of that concept. The Company's annual meeting minutes of January 19, 1998 state that the idea was "originated by Lucy Bickett in 1994." The Company's 2012 business plan describes the concept as derived from a family circumstance involving a divorce.

***B. Formation and Sole Ownership of the Company***

16. TNT was incorporated in Kentucky on January 10, 1996. Its bylaws were adopted January 15, 1996 and provide for a board of not fewer than one and not more than three directors.

17. Effective February 13, 1996, TNT issued ten (10) fully paid and non-assessable shares of common stock to N.L. Bickett Edwards. No other share certificate has ever been issued, and the certificate bears no transfer endorsement.

18. TNT elected S corporation status effective February 13, 1996. Its federal income tax return for 1996 reports one (1) shareholder at the close of the tax year.

19. The Company's minutes of January 19, 1998 — a meeting attended by Ms. Bickett, Defendant Paula Shaw, and Defendant Delvenia Stumph — record that "Lucy Bickett is the President, Secretary and Treasurer — the entirety of the Board." Those minutes reflect that assignment of officer or director positions to Defendants was discussed, that outside counsel would be required to effect any such assignment, and that Ms. Bickett would remain President until a conclusion was reached. No such assignment was ever made.

20. In a corporate resolution certified to National City Bank of Kentucky in connection with the Company's banking relationship, adopted at the annual meeting of January 19, 2000, Nora

Lucille Bickett is identified as the Company's President and as its sole authorized signatory. No other officer is listed.

21. No Defendant has ever held shares in the Company, served as a director or officer, contributed capital, or been recorded in any corporate, banking, or tax record as holding any interest in the Company.

***C. Development of the Designs***

22. Ms. Bickett created the original concept sketches and the first prototype. Over a period of years, the design was refined through successive iterations directed by her.

23. Matilda Bickett, the mother of Ms. Bickett and of Defendants, was a skilled seamstress. She sewed samples in support of her daughter's concept and contributed bear and bunny patterns that Ms. Bickett elected to produce. She did so as a family member supporting her daughter's venture. She was never an employee of the Company, never received wages or salary from the Company, and never executed any instrument purporting to convey or reserve rights in any design.

24. Others assisted in the development of the product at Ms. Bickett's direction and were paid by her for the work they performed. Ms. Bickett's original patterns were cut from newspaper. Those who assisted worked from Ms. Bickett's existing designs, patterns, and materials, and their contributions were limited to refinements directed to manufacturability. None originated any design. None executed any instrument purporting to reserve any right in any design, and none has ever asserted any such right. No Defendant performed, directed, or paid for any of that work.

25. Following the decedent's death, Ms. Bickett paid the decedent's estate approximately $300 for materials the decedent had purchased in connection with that work, by check delivered to Defendant Susan Delvenia Stumph.

***D. Dormancy, Revival, and Repudiation***

26. The Company became dormant in or about 2003, following completion of the final prototypes of its initial product. Ms. Bickett suspended active development of the product after receiving the document described below. Matilda Bickett died on June 14, 2004.

27. By written addendum to its minutes dated April 16, 2012, the Company recorded that "[n]one of Lucy Bickett's family members are any longer involved in the company or its projects," and that all marketing, manufacturing, vendor procurement, legal, and accounting work was being managed by Ms. Bickett as owner, President, and sole officer. That statement was made openly and of record more than fourteen years ago.

28. The product names used in the Company's early period — including HUG HEADS and SQUEEZE ME PLEASE — were discontinued and abandoned, as recorded in the same addendum.

***E. The Decedent's Estate***

29. On August 26, 2004, Defendant Susan D. Stumph subscribed and swore to a Petition concerning the decedent's estate. The Petition was filed in the Henry District Court on November 3, 2004, through counsel, as In re the Estate of Matilda E. Bickett, No. 04-P-00116. It sought probate of the decedent's will only, and did not seek the appointment of any executor or administrator.

30. The Petition stated under oath that there had been no previous administration of the decedent's estate in Kentucky or elsewhere, and that the statements it contained were true.

31. The Petition listed the decedent's real estate as "NONE," with an estimated total value of $0. It listed the decedent's personal property as a 1996 Ford Taurus valued at $1,550.00 and a certificate of deposit at Stock Yards Bank valued at $6,485.68, with an estimated total value of $8,035.68.

32. The Petition did not list, disclose, or otherwise identify any interest of the decedent in any design, pattern, prototype, copyright, trademark, or other intellectual property; any interest in Tuck 'n' Tillie, Inc.; or any account receivable owed to the decedent by Ms. Bickett or by the Company, including the sum of $71,600 now asserted.

33. The Henry District Court ordered the will probated on November 3, 2004, upon finding it self-proved, and entered its Order on November 10, 2004, together with an Order Dispensing With Administration. The line of the Order reserved for the appointment of an executor or administrator was left blank. No fiduciary was appointed, no inventory was filed, and the matter was disposed of on that date. It has remained closed for nearly twenty-two years.

34. In petitioning to dispense with administration, Defendant Stumph represented that the decedent's estate required no administration. Neither the monetary claim Defendants now assert, nor any copyright or other interest in any design, pattern, or prototype, was disclosed to the court, inventoried, or administered in that proceeding.

***F. The Decedent's Will***

35. The decedent executed her Last Will and Testament at Owensboro, Daviess County, Kentucky, on August 8, 1997 — nineteen months after the Company was incorporated, and after the Company's products had been offered publicly for sale. The will makes no reference to the Company, and devises no interest in any design, pattern, prototype, or other intellectual property.

36. Item II of the will devises the rest and residue of the decedent's tangible personal property to her children, equally, share and share alike.

37. Item III of the will provides that, if her son Samuel Joseph Bickett survived her, all of the rest and residue of the decedent's property, both real and personal, wheresoever situated, passes to Defendants Susan Delvenia Stumph and Jack Stumph as co-trustees for the use and benefit of Samuel Joseph Bickett. Item VI directs that upon the death of Samuel Joseph Bickett the principal of that trust be distributed to Defendants Susan Delvenia Stumph and Jack Stumph, equally and absolutely.

38. Any intangible interest of the decedent, including any copyright interest, would therefore have passed under Item III rather than under Item II. Samuel Joseph Bickett died on April 1, 2026. Under Item VI, any such interest would have vested upon his death in Defendants Susan Delvenia Stumph and Jack Stumph.

39. Defendant Paula Shaw accordingly takes no interest in any intangible property of the decedent under the will she invokes. Her assertion that the Company's designs and patterns belong to "the heirs of Matilda's estate" is inconsistent with the dispositive scheme of her mother's will and with the sworn Petition filed by her co-Defendant.

***G. The Registered Trademark***

40. On July 24, 2023, TNT applied to register its composite word-and-design mark. On November 26, 2024, the United States Patent and Trademark Office issued Registration No. 7,575,800 on the Principal Register to Tuck 'N' Tillie, Inc., a Kentucky corporation, in International Class 28 for a full line of plush dolls designed to wrap around the shoulders, neck, and torso to provide a calming presence during times of loneliness, stress, or anxiety.

41. The registration is owned of record by the Company. It is valid, subsisting, and in full force and effect, and constitutes prima facie evidence of the Company's exclusive right to use the mark in commerce in connection with the goods identified therein.

42. The design element of the registered mark was created in 2023 at the Company's direction and expense, and the Company has since used the mark in commerce in connection with the goods identified in the registration. No Defendant participated in the creation, selection, or adoption of the mark, contributed to the cost of obtaining its registration, or has even been identified in connection with it.

***H. The Present Controversy***

43. Samuel Joseph Bickett, a brother of Ms. Bickett and of Defendants, died on April 1, 2026. On April 24, 2026, Ms. Bickett petitioned the Henry District Court for appointment as fiduciary of his intestate estate in In re the Estate of Samuel Joseph Bickett, No. 26-P-00047. Defendant Stumph filed a counter-petition on May 26, 2026. By agreed order entered July 16, 2026, the court appointed a public administrator and remanded the contested hearing from its docket.

44. On July 1, 2026, while that matter was pending, Defendant Stumph filed a witness list in No. 26-P-00047 identifying seven witnesses and summarizing their anticipated testimony. Defendant Shaw is identified as the third of those witnesses.

45. The witness list states that Defendant Shaw will testify that Ms. Bickett "is currently selling a stuffed hug product that was created and designed with patterns and prototypes by Matilda," that Ms. Bickett is "selling this product, without permission from the heirs of Matilda's estate," and that "[t]here are many witnesses to Matilda Bickett being the rightful creator of the patterns and prototypes around 1994."

46. The witness list further identifies the Company's public website, tuckntillie.com, as evidence of the asserted wrong, and characterizes the Company's published attribution of its first prototype to a seamstress as a wrongful attribution.

47. The witness list states that Defendant Stumph will testify as a "[w]itness to the nonpayment of an invoice dated June 7, 2003, given to Nora Lucille Bickett by Matilda Bickett for $71,600 for production of hug products for two years from creation in 1994," and that the decedent "never received any money from the sale of items she made nor the materials purchased." Plaintiffs do not dispute that the invoice was never paid; they dispute that any sum was ever owed, for the reasons stated in Paragraph 49 below. The second assertion is false. Ms. Bickett reimbursed the decedent approximately $300 for materials the decedent had purchased, and applied approximately $500 of the Company's limited sales proceeds to materials for the decedent's use and to the Company's operating expenses, including its post office box and its tax filings. Ms. Bickett retains the sales records for that period.

48. The witness list identifies two additional witnesses, neither of whom is a party to any proceeding, each of whom is stated to be prepared to testify concerning Ms. Bickett "misappropriating the intellectual property of Matilda Bickett."

49. The document referenced in the witness list is styled as an invoice for the production of goods and for materials purchased. On its face it characterizes the decedent as a supplier of labor and materials rather than as the owner of any right in any design. Plaintiffs are informed and believe, and on that basis allege, that the document was prepared by Defendants Susan Delvenia Stumph and Paula Shaw rather than by the decedent. It was delivered to Ms. Bickett by Defendant Susan Delvenia Stumph, on the decedent's behalf, in 2003. It was not listed among the decedent's assets in the Petition that Defendant Stumph swore to the following year.

Plaintiffs deny that any sum is owed, allege that no agreement, written or otherwise, obligated Ms. Bickett or the Company to pay the sum stated, reserve all rights concerning the authenticity, provenance, and date of creation of that document, and state that any claim upon it would sound in contract and would have been barred not later than 2008 under KRS 413.120.

50. Defendant Shaw has further asserted, and continues to assert, that she served as a member of the Company's board of directors.

51. By the foregoing, Defendants have asserted in a public court filing, and have communicated to persons who are not parties to any proceeding, that the designs and patterns underlying the Company's products were created by the decedent, that title to them resides in the decedent's heirs, that the Company's continuing sales are unauthorized, and that a monetary claim of $71,600 remains outstanding. An actual, substantial, and continuing controversy of sufficient immediacy and reality exists between Plaintiffs and Defendants regarding ownership of the copyrights in the Company's designs and patterns, the ownership and validity of Registration No. 7,575,800, and Defendants' claimed interests in the Company.

## CLAIMS FOR RELIEF

### *COUNT I — Declaratory Judgment of Copyright Ownership*

### *(28 U.S.C. §§ 2201–2202; 17 U.S.C. §§ 201, 204)*

52. Plaintiffs incorporate the foregoing paragraphs as if fully set forth.

53. The concept, sketches, and original design of the Company's products are original works of authorship fixed in tangible media and are protected under 17 U.S.C. § 102.

54. Ms. Bickett authored the original concept and design. No Defendant authored, contributed to, or directed the creation of any of the works at issue. To the extent Matilda Bickett

contributed any expression to those works, she did so at Nora Lucille Bickett's request and in support of her venture.

55. Matilda Bickett executed no instrument transferring any copyright interest to any person, and no writing signed by her purports to reserve any such interest. The invoice on which Defendants rely, even if authentic, claims payment for production and materials and does not purport to convey, reserve, or assert ownership of any copyright.

56. The decedent's estate was closed without administration on November 10, 2004. No interest in any design, pattern, or prototype was disclosed in the sworn Petition, inventoried, or administered in that proceeding, and the decedent's will devised no such interest. Any claim of the decedent, her estate, or her devisees to ownership of the works at issue accrued, at the latest, upon the Company's open and continuous public exploitation of those works, and is barred by 17 U.S.C. § 507(b) and by laches.

57. Plaintiffs are entitled to a declaration that they, and not Defendants, own all copyright interests in the designs, patterns, sketches, and prototypes at issue, and that Defendants hold no such interest.

***COUNT II — Declaratory Judgment of Non-Infringement***

***(28 U.S.C. §§ 2201–2202; 17 U.S.C. § 501)***

58. Plaintiffs incorporate the foregoing paragraphs as if fully set forth.

59. The Company's manufacture, marketing, distribution, and sale of its products do not infringe any copyright held by Defendants, by any devisee of Matilda Bickett, or by any estate of the decedent.

60. Plaintiffs are entitled to a declaration to that effect.

***COUNT III — Declaratory Judgment of Trademark Ownership and Validity***

***(28 U.S.C. §§ 2201–2202; 15 U.S.C. §§ 1057, 1064, 1115)***

61. Plaintiffs incorporate the foregoing paragraphs as if fully set forth.

62. TNT is the owner of record and the rightful owner of United States Trademark Registration No. 7,575,800. The Company applied for and obtained the registration in its own corporate name, and has used the mark in commerce in connection with the identified goods.

63. Defendants hold no ownership interest in the registered mark. Their assertion that the Company's products and the brand under which they are sold belong to the decedent's heirs places the Company's title to the registered mark in dispute and exposes the registration to challenge.

64. Plaintiffs are entitled to a declaration that the Company is the lawful and exclusive owner of the registered mark and of the common law rights associated with it.

***COUNT IV — Declaratory Judgment of Corporate Ownership and Governance***

***(28 U.S.C. §§ 2201–2202; KRS Chapter 271B)***

65. Plaintiffs incorporate the foregoing paragraphs as if fully set forth.

66. Ms. Bickett is the sole shareholder of TNT and its sole officer and director. No Defendant has ever been a shareholder, director, or officer of the Company, and no Defendant holds any equity, voting, or governance interest in it.

67. Plaintiffs are entitled to a declaration to that effect, and to a declaration that any claim by any Defendant to an ownership or governance interest arising from discussions in or about January 1998 is barred by the applicable statutes of limitation and by laches.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Declare that Plaintiffs own all copyright interests in the designs, patterns, sketches, and prototypes at issue, and that Defendants hold no such interest;

b. Declare that the Company's products do not infringe any copyright held by Defendants, by any devisee of Matilda Bickett, or by any estate of the decedent;

c. Declare that Tuck 'n' Tillie, Inc. is the lawful owner of United States Trademark Registration No. 7,575,800 and of the common law rights associated with the mark;

d. Declare that no Defendant is or has ever been a shareholder, director, or officer of Tuck 'n' Tillie, Inc.;

e. Enter such further relief, including costs and, if warranted, attorneys' fees, as the Court deems just and proper.

*/s/ Parker M. Wornall*
Parker M. Wornall
Dayton N. Blair
Wornall & Blair PLLC
806 Stone Creek Pkwy., Ste. 10
Louisville, KY 40223
(502) 284-8474
parker@wornallfirm.com
dayton@wornallfirm.com
*Counsel for Plaintiffs*